**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEFFREY NEIL YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HIGHTOWER HOLDING, LLC,<br><br>Defendant. | Case No. 1:26-cv-03492<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey Neil Young ("Plaintiff"), brings this action on behalf of himself and all others similarly situated against Defendant Hightower Holding, LLC ("Hightower" or "Defendant"). By way of this action ("Action"), Plaintiff seeks damages, restitution, and injunctive relief on behalf of a class of individuals ("Class" or "Class Members") whose personally identifiable information ("PII") was compromised in the breach of Defendant's computer network that was first noticed in about January 8, 2026 (the "Data Breach"). Plaintiff makes the following allegations upon personal knowledge as to his own actions, upon information and belief as to all other matters, as well as upon the investigation of counsel and matters of public record.

## NATURE OF THE ACTION

1. Plaintiff brings this nationwide class action against Defendant as a result of a widespread and preventable Data Breach that compromised the personal and sensitive information of thousands of individuals, including Plaintiff.

2. This action arises from Defendants' failure to adequately secure and protect PII entrusted to it by Plaintiff and the Class. The impacted information includes, among other things, names, dates of birth, financial account numbers, and social security numbers.

3. The Data Breach occurred on or about January 8 to January 9, 2026, when a hacker was able to gain unauthorized access to the Defendant's computer "environment" and exfiltrated the PII of over 130,000 clients.

4. Hightower subsequently engaged in an investigation and has stated that it thereafter remediated secured its network.

5. Defendant failed to provide timely and adequate notice to affected individuals, waiting until late March 2026, approximately three months after discovery, to notify Plaintiff and other Class Members. This delay exacerbated the harm by depriving victims of the opportunity to take prompt protective measures.

6. Defendant's negligence in failing to implement adequate cybersecurity measures, combined with its failure to act swiftly to notify those affected, constitutes a clear disregard of consumer privacy and data security obligations.

7. As a consequence of the Data Breach, Plaintiff and Class Members face a heightened and ongoing risk that their PII and particularly their financial information, will be misused, including through identity theft.

8. Plaintiff and Class Members must now undertake time-consuming and costly efforts to protect themselves, including monitoring their financial and medical accounts, placing fraud alerts, and considering credit freezes.

9. In many cases, Plaintiff and Class Members will incur out-of-pocket expenses for credit monitoring services, identity theft protection, credit reports, or other protective measures to guard against misuse of their data.

10. Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was stored such that a compromised user account could enable hackers to

gain entry into its computer system and exfiltrate sensitive PII which could be used to gain access to customer's financial accounts. The potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known and foreseeable risk to Defendants.

11. Defendant disregarded the privacy and property rights of Plaintiff and Class Members by, *inter alia*, failing to implement adequate data security measures, failing to disclose that its systems were insufficiently robust to safeguard the Private Information, failing to take readily available steps to prevent the Data Breach, and failing to provide prompt, complete, and accurate notice once the breach was discovered.

12. Plaintiff's and Class Members' Private Information is now in the hands of unauthorized third parties. With the Private Information obtained through the Data Breach, criminals can commit a wide range of fraudulent activities, including opening new financial accounts, taking out loans, filing false medical or insurance claims, and applying for government benefits.

13. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft.

14. Plaintiff and Class Members seek damages and equitable relief to remedy these harms, including compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief such as improvements to Defendant's data security systems, annual third-party audits, and long-term credit monitoring services funded by Defendants.

15. Through this action, Plaintiff seeks to hold Defendant's accountable for their negligent, reckless, and unlawful conduct, and to ensure that Plaintiff and all Class Members receive meaningful relief and protection.

## PARTIES

16. Plaintiff Jeffrey Neil Young is a resident of Cumberland Foreside, Maine.

17. On or about March 23, 2026, Plaintiff received a written notification letter from Hightower (the "Data Breach Letter") informing him that his PII had been accessed or copied in the Data Breach.

18. Specifically, the Data Breach Letter stated that Plaintiff's Private Information subject to the Data Breach included: his date of birth, and financial account number.

19. Defendant Hightower is a limited liability company that maintains its principal place of business in Chicago, IL. Hightower is a holding company for entities providing financial management, retirement planning, and wealth and advisory services through Hightower Advisors, Hightower Securities and Hightower Trust Company.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed Class; and at least one Class Member is a citizen of a state different from Defendant.

21. This Court has general personal jurisdiction over Defendant as it maintains its principal place of business in this District and therefore conducts substantial business in this District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business here, and a substantial part of the events giving rise to this Action occurred in this District.

## FACTUAL ALLEGATIONS

**Defendant Had Duties to Take Reasonable Measures to Protect Plaintiff's and the Class' PII**

23. Defendant Hightower is a holding company for a number of financial institutions including Hightower Advisors, Hightower Securities, and Hightower Trust Company. As a result, it maintains highly sensitive personal and financial data of its clients.

24. Plaintiff and Class Members are current and former customers who provided Hightower with their sensitive personal and financial information and were required to entrust Defendant with their with highly sensitive Private Information in order to obtain financial services.

25. In exchange for receiving Plaintiff's and Class Members' Private Information, Defendant promised to safeguard the sensitive, confidential data and use it only for authorized and legitimate purposes, and to timely delete such information.

26. By obtaining, using and benefiting from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting that Private Information from unauthorized access and disclosure.

27. Defendant had a duty to adopt reasonable measures to keep Plaintiff's and Class Members' Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor and verify the integrity of their IT network systems.

28. The Data Breach was entirely preventable. Reasonable cybersecurity protocols—including effective network monitoring—could have prevented or at least mitigated the attack.

29. Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII.

30. Defendant further had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

31. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a. Maintaining a secure firewall configuration;

b. Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c. Monitoring for suspicious or irregular traffic to servers;

d. Monitoring for suspicious credentials used to access servers;

e. Monitoring for suspicious or irregular activity by known users;

f. Monitoring for suspicious or unknown users;

g. Monitoring for suspicious or irregular server requests;

h. Monitoring for server requests for PII;

i. Monitoring for server requests from VPNs; and

j. Monitoring for server requests from Tor exit nodes.

32. Because of this targeted, intentional cyberattack, data thieves were able to gain access to and obtain data from Defendant that included the Private Information of Plaintiff and Class Members.

33. Defendant admits that the files exfiltrated contained at least the following information of Plaintiff: birth date, and financial account numbers.

34. Upon information and belief, the Private Information stored on Hightower's network was not encrypted.

35. Plaintiff's Private Information was accessed and stolen in the Data Breach. Plaintiff reasonably believed his stolen Private Information is currently available for sale on the Dark Web because that is the *modus operandi* of cybercriminals who target businesses that collect highly sensitive Private Information.

36. As a result of the Data Breach, Hightower now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

37. Hightower is encouraging Plaintiff and Class Members to enroll in credit monitoring and identity theft restoration services is an acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

**Defendant Did not Make Timely Disclosure of the Data Breach**

38. Despite confirming the breach in January 2026, Defendant did not provide timely notice to Plaintiff or other affected individuals until late March 2026.

39. Instead, Defendant delayed disclosure for months.

40. Nearly all states require companies to notify individuals of a data breach "in the most expedient time possible and without unreasonable delay." Many states impose statutory deadlines of 30 to 60 days for notification.

41. Defendant's three month delay, exceeded these statutory deadlines.

42. As a result, Plaintiff and other Class Members were deprived of the opportunity to take timely steps to mitigate the risks of identity theft, medical fraud, and other misuse of their information.

43. Defendant's failure to secure sensitive information and to provide prompt, accurate, and complete notice violated industry standards, federal guidelines, state data breach notification statutes, and its own stated privacy assurances.

44. Plaintiff and Class Members have suffered losses as a direct result of the Data Breach, including the loss of value of their Private Information, out-of-pocket costs for protective measures, time spent monitoring financial accounts, and emotional distress caused by the loss of privacy and risk of fraud.

**Defendant Was on Notice that A Ransomware Attack Could have Occurred**

45. Defendant was aware that a ransomware attack such as the Data Breach could occur. In 2021, there was a 15.1% increase in cyberattacks and data breaches since 2020.

46. Over the next two years, in a poll done on security executives, they have predicted an increase in attacks from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[1]

47. In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

---

[1]https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year2022-that-you-need-to-know/?sh=176bb6887864 (last accessed Dec. 5, 2024).

48. Cyberattacks have become so notorious, that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, and hopefully can ward off a cyberattack.

49. According to an FBI publication, "[r]ansomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to and the loss of critical information and data." [2] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[3]

50. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Hightower failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

**The Value of Private Information and the Effects of Unauthorized Disclosure**

51. At all relevant times, Defendant was well aware that the Private Information it collects from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

52. Private Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including

---

[2] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scamsand-crimes/ransomware (last accessed Dec. 27, 2024).

[3] *Id.*

identify theft, and medical and financial fraud.[4] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and PHI on multiple underground Internet websites, commonly referred to as the dark web.

53. While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[5]

54. The ramifications of Defendant's failure to keep Plaintiff and Class Member's Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

55. Further, criminals often trade stolen Private Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Private Information on the internet, thereby making such information publicly available.

56. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [6] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[7]

---

[4] Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed July 20, 2022).

[5] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at:* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed July 20, 2022).

[6] *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed July 20, 2022).

[7] Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches* ("*Potential Damages*"), *available at:*

57. The injuries to Plaintiff and Class Members were directly and proximately caused by Hightower's failure to maintain or implement adequate data security measures for Plaintiff and Class Members.

**Defendant Failed to Comply with FTC Guidelines**

58. Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

59. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[8]

60. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[9] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

---

https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accesses July 20, 2022).

[8] Federal Trade Commission, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed July 20, 2022).

[9] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 20, 2022).

61. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[10]

62. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63. Regulatory guidance and precedent have established that companies are responsible for safeguarding personal data entrusted to them, even when it is handled or processed by third-party vendors. The FTC has repeatedly held data controllers accountable for security failures involving outsourced services, emphasizing that liability cannot be outsourced.

64. The FTC has explicitly warned that businesses must perform due diligence on service providers, require contractual data protection obligations, and continuously monitor vendor compliance. These obligations are fundamental to fulfilling a company's duty to implement reasonable security practices.

**Defendant's Inadequate Security Caused Concrete Injuries to Plaintiff and the Class**

[10] FTC, *Start With Security*, *supra* note 16.

65. Plaintiff and Class Members reasonably expected that Defendants would provide adequate security protections for their PII. Class Members provided Defendant with sensitive personal information, including names, addresses, dates of birth, and financial information.

66. Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII was entrusted to Defendant understood and expected that, as part of that relationship, they would receive reasonable data security protections. In fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received data security of lesser value than they reasonably expected, and they suffered pecuniary injury as a result.

67. Cybercriminals intentionally target and exfiltrate PII to exploit it. Class Members are therefore now, and for the rest of their lives will be, at a heightened and substantial risk of identity theft, and fraud. Plaintiff has also incurred (and will continue to incur) damages in the form of, inter alia, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

68. The cybercriminals who obtained Class Members' PII may exploit the information by selling it on so-called "dark markets" or the "dark web." Having obtained names, addresses, dates of birth, financial information, and other identifiers, cybercriminals can pair this data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- applying for credit cards or loans;
- stealing funds from Class Member's financial accounts; and
- impersonating minors online to facilitate additional fraud or exploitation.

69. In addition, if a Class Member's health insurance or medical information is misused to create false records or fraudulent claims, the Class Member may later encounter difficulties obtaining proper medical treatment, accurate insurance coverage, or financial aid.

70. As a direct and proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

71. PII has a long shelf-life because it contains persistent identifiers that cannot easily be changed, can be used in multiple ways, and typically takes time for fraudulent misuse to be discovered.

72. Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and fraud.

73. As a result of the Data Breach, Plaintiff and Class Members have already suffered injuries and remain at a substantial and imminent risk of future identity theft and misuse of their personal information.

## CLASS ALLEGATIONS

74. Plaintiff brings this class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

75. The Class that Plaintiff seeks to represent is defined as follows:

> **All persons in the United States whose personally identifiable information ("PII") was accessed, acquired, or compromised in the Data Breach.**

76. Excluded from the Class are: (a) Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors; (b) Defendant's current and former employees and subcontractors

involved in the provision of services relevant to this litigation; (c) any individuals who timely and validly request exclusion from the Class; (d) any federal, state, or local government entity, including their agencies, divisions, departments, and subdivisions; and (e) any judicial officer presiding over this action and members of his or her immediate family.

77. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

78. Numerosity, Fed. R. Civ. P. 23(a)(1): The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of over 130,000 individuals whose PII was compromised in the Data Breach.

79. Commonality, Fed. R. Civ. P. 23(a)(2) and 23(b)(3): Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. These common issues include, but are not limited to:

a. Whether and when Defendant actually learned of the Data Breach and whether its response, including when it disseminated the Data Breach Letter, was adequate;

b. Whether Defendant owed a duty, whether common law or statutory, to Plaintiff and Class Members to exercise reasonable care in collecting, storing, and safeguarding their PII;

c. Whether Defendant breached its duties;

d. Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of Plaintiff's and Class Members' PII;

e. Whether Defendant acted negligently in failing to protect Plaintiff's and Class Members' PII;

f. Whether Defendant knew or should have known that its security measures were inadequate;

g. Whether Defendant adequately remediated vulnerabilities and risks that permitted the Data Breach to occur;

h. Whether Defendant's conduct caused damage to Plaintiff and Class Members;

i. Whether Defendant failed to provide timely and adequate notice of the Data Breach;

j. Whether Plaintiff and Class Members are entitled to damages, credit monitoring, or other monetary relief; and

k. Whether Defendant's conduct violated common law or statutory duties as alleged in this Complaint.

80. Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of the Class because all Class Members had their PII compromised as a result of the Data Breach caused by Defendant's misconduct.

81. Policies Generally Applicable to the Class: Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole. Defendant's conduct and policies applied uniformly to all Class Members.

82. Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that conflict with those of the Class and seeks the same relief as other Class Members. Plaintiff has retained counsel experienced in complex consumer and data breach class actions who are qualified to represent the Class.

83. Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment allows a large number of similarly situated individuals to pursue their claims in one

forum, economizing resources and avoiding the burden of repetitive litigation. Absent a class action, many Class Members would be unable to obtain relief given the expense of pursuing individual actions against a large corporation.

84. The class action device is particularly appropriate here because Defendants would otherwise retain an unfair advantage from their misconduct by exploiting its vastly superior resources against individuals with relatively modest claims. Class action treatment also avoids the risk of inconsistent judgments, promotes judicial efficiency, and ensures that Class Members' rights are fairly and uniformly protected.

85. This Action is manageable as a class action. Defendants' uniform conduct, the availability of common proof, and the ascertainable identities of Class Members from Defendants' records eliminate any significant manageability concerns.

86. Adequate notice can be provided to Class Members using the contact information maintained in Defendant's records.

87. Unless the Court issues a Class-wide injunction, Plaintiff and Class Members remain at risk that Defendant will continue failing to properly safeguard their PII, will inadequately notify victims of breaches, and will persist in the unlawful practices described herein.

88. Defendant has acted or refused to act on grounds generally applicable to the Class, rendering final injunctive or corresponding declaratory relief appropriate under Fed. R. Civ. P. 23(b)(2).

89. In addition, particular issues under Rule 23(c)(4) are appropriate for certification because they present common questions, the resolution of which would materially advance this litigation. These issues include, but are not limited to:

a. Whether Defendants owed a duty of care to Plaintiff and Class Members in safeguarding their PII;

b. Whether Defendant breached that duty;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards regarding data security;

d. Whether Defendant failed to implement reasonable measures to prevent or mitigate the Data Breach; and

e. Whether Plaintiff and Class Members are entitled to damages, injunctive relief, and/or punitive damages as a result of Defendants' conduct.

## CAUSES OF ACTION

### Count I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

130. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

131. Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of the regular course of its business operations. Plaintiff and Class Members were entirely dependent on Defendants to use reasonable measures to safeguard their Private Information and were vulnerable to the foreseeable harm described herein should Defendants fail to safeguard their Private Information.

132. By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's

duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

133. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

134. Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

135. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

136. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

137. Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its clients, which solicitations and services affect commerce.

138. Defendants violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

139. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

140. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who received their services, which is recognized by laws and regulations, as well as common law.

141. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach or data breach.

142. Defendant's multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

143. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations, but also because Defendant is bound by industry standards to protect confidential Private Information.

144. Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

145. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendants' possession.

146. Defendant was in a special relationship with Plaintiff and Class Members with respect to the hacked information because the aim of Defendant's data security measures was to benefit Plaintiff and Class Members by ensuring that their personal information would remain

protected and secure. Only Defendant was in a position to ensure that its systems were sufficiently secure to protect Plaintiff's and Class Members' Private Information. The harm to Plaintiff and Class Members from its exposure was highly foreseeable to Defendants.

147. Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

148. Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

149. Defendant has duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems; and

c. To promptly notify Plaintiff and Class Members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Private Information.

150. Only Defendant was in a position to ensure that their systems and protocols were sufficient to protect the Private Information that had been entrusted to them.

151. Defendant breached their duties of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendants breached their duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Private Information in its possession;

b. Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

d. Failing to adequately train their employees to not store unencrypted Private Information in their personal files longer than absolutely necessary for the specific purpose for which it was sent or received;

e. Failing to consistently enforce security policies aimed at protecting Plaintiff's and Class Members' Private Information;

f. Failing to mitigate the harm caused to Plaintiff and the Class Members;

g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h. Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

152. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

153. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

154. Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

155. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigating damages.

156. As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to the fraudulent use of the Private Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

157. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

158. The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

159. Plaintiff and the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

## Count II
## NEGLIGENCE *Per Se*
## (On behalf of Plaintiff and the Class Against Defendant)

160. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

161. Section 5 of the FTC Act, 15 U.S.C. § 45 prohibits, "unfair...practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff and Class Members' Private Information.

162. Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information and by failing to comply with industry standards.

163. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems. Plaintiff was required to provide PII to Defendant. Plaintiff and Class Members entrusted their PII to Defendant with the understanding that Defendant would safeguard their PII and PHI.

164. Class Members are within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

165. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

166. But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

167. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it failed to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

168. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**Count III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

169. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

170. Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving financials services.

171. Plaintiff and Class Members provided their PII to Defendant in exchange for Defendant's services. In exchange for the PII, Defendants promised to protect their PII from unauthorized disclosure.

172. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

173. Implicit in the agreement between Plaintiff and Class Members and the Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

174. When Plaintiff and Class Members provided their Private Information to Defendant as a condition of relationship, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

175. Defendant required Class Members to provide their Private Information as part of Defendant's regular business practices.

176. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

177. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

178. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

179. Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

180. As a direct and proximate result of Defendant's breaches of the implied contracts,

181. Class Members sustained damages as alleged herein.

182. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

183. Plaintiff and Class Members are also entitled to nominal damages for the breach of implied contract.

184. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Class Members for a period longer than the grossly inadequate one-year currently offered.

**Count IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

185. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

186. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of the provision of their Private Information without which Defendant would be unable to engage in their regular course of business.

187. Defendant appreciated that a monetary benefit was being conferred upon them by Plaintiff and Class Members and accepted that monetary benefit.

188. However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof. Specifically, Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase their own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

189. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures.

190. Defendants acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendants.

191. Plaintiff and Class Members have no adequate remedy at law. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

192. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

193. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**Count V**
**DECLARATORY JUDGMENT**
**(On behalf of Plaintiff and the Class)**

194. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

195. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

196. An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information.

197. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

198. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;
b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

199. The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

200. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach by Defendant. The risk of another such breach is real, immediate, and substantial. If another breach on Defendant's networks or through their vendors occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

201. The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs by Defendant, Plaintiff and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures. Issuance of the requested injunction will not do a disservice to the public interest.

202. On the contrary, such an injunction would benefit the public by preventing another data breach by Defendant, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosure of its Data Breach to Plaintiff and Class Members;

C. For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

D. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E. For declaratory relief as requested;

F. Ordering Defendant to pay for lifetime credit monitoring or similar services for Plaintiff and the Class;

G. For an award of actual damages, compensatory damages, and statutory damages, in an amount to be determined, as allowable by law;

H. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

I. Pre- and post-judgment interest on any amounts awarded; and

J. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 30, 2026

**Respectfully submitted,**

By: *Gary M. Klinger*
Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

**THEGRANTLAWFIRM, PLLC**
Lynda J. Grant*
521 Fifth Avenue, 17th floor
New York, NY 10025
Telephone: 212-292-4441
Facsimile: 212-292-4442
lgrant@grantfirm.com

***Attorneys for Plaintiff and the Class***

**pro hac vice forthcoming*